DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RICHARD LANGE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-1717

[June 5, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Daliah H. Weiss, Judge; L.T. Case No. 2021CF003407.

Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Richard Valuntas, Senior Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant appeals his conviction and sentence for sexual battery and murder. He makes two arguments. First, he argues the trial court abused its discretion when it did not allow defense counsel to recross-examine one of the State's DNA experts. And second, he argues the trial court erred when it overruled defense counsel's objection to the State's closing argument. We find no error and affirm.

The State charged the defendant with first degree murder and sexual battery (deadly weapon/physical force). The victim was found by a passerby, unconscious, "lying naked and motionless on [a] desolate dirt roadway." After a jury trial, the jury found the defendant guilty of both counts. The trial court subsequently sentenced him to life imprisonment on the murder charge and fifteen years imprisonment on the sexual battery charge—to run consecutive with the life sentence.

On appeal, the defendant argues the trial court erred in sustaining the State's objection to recross of one of the State's DNA experts regarding the defendant's father. The defendant also argues the State misconstrued the

evidence during its rebuttal closing argument and the trial court erred in overruling the defense objection.

The State responds the trial court did not err in either ruling. First, the attempted recross concerned a matter not raised during redirect. And second, the prosecutor's statement was supported by testimony presented at trial.

- ***The Facts***

The crime took place in 1985. In 2019, advances in forensic science allowed law enforcement to reopen the investigation with DNA evidence. After at least three DNA evaluations over the course of a few years, law enforcement obtained a DNA search warrant for the defendant's DNA. Law enforcement subsequently obtained a saliva swab from the defendant. The DNA from the swab matched the DNA found in the victim's vaginal swab.

On cross-examination of the second DNA expert to test the DNA, defense counsel asked if she had a DNA profile for the defendant's brothers. The witness said she did not. On redirect, the State asked the witness if, barring any of the brothers being twins of the defendant, would they have the same DNA profile as the defendant. The witness responded the brothers probably would not.

On redirect of the State's third DNA expert, the witness testified he did not know if the defendant had brothers. On re-cross examination, defense counsel wanted to ask about the defendant's father. The State objected, arguing, "The defense asked about brothers. And I don't believe that there is — there is no door that has been opened for him now to get up on recross and ask a question he didn't ask before." The trial court agreed.

During its closing argument, the State argued:

> **The State**: What were the results, once they had their suspect and they compared [the defendant's] DNA to the mixture on the vaginal swabs. Well, you heard the number of quadrillion. This is what it looks like. If you need a visual representation about what quadrillion looks like, that is fifteen [zeros]. So it is 27 quadrillion times more likely that the mixture in the vaginal swabs came from [the victim] and the defendant than if it was from [the victim] and an unknown individual in the population.
>
> **Defense Counsel**: Objection, facts not in evidence.

2

**The Trial Court**: Okay, overruled.

**The State**: And what was the next thing that [one of the State's DNA experts] told you? He gave you the statistic, and then he said there is also a proposition that goes with that statistic. And that proposition is important because what does it say? That this provides very strong support for the proposition that [the defendant] is a contributor to the mixture.

Then, during its rebuttal closing argument, the State commented:

No one went and put the defendant's sperm inside of [the victim's] vagina. His DNA being there is because he was there. These are two intimate parts of a person's body that were found on a swab. And no matter how many times defense wants to say it's partial, it's partial, it's partial, it's partial, but it's him. It is him. To say that it's not him is to say or to suggest that everyone in his family has the same sperm? That is ridiculous, and I stand on that.

Defense counsel never objected.

From his conviction and sentence, the defendant now appeals.

- ***The Analysis***

The defendant argues the trial court abused its discretion in limiting defense counsel from recross examining the third DNA expert about whether the DNA analysis fully considered the possibility that someone else could have committed the crime. According to the defendant, this point goes to identity, which is an element the State had to prove. The State responds the trial court did not abuse its discretion because the defendant's question went outside the scope of re-direct examination.

"Whether to allow re-cross-examination is subject to the trial court's broad discretion over the admission of evidence." *Hurst v. State*, 825 So. 2d 517, 517 (Fla. 4th DCA 2002). Thus, "[f]or this Court to consider whether a trial court erred in excluding testimony, the party seeking to introduce the evidence must timely 'proffer a foundation that would have established the relevance of the excluded evidence.'" *Palos v. State*, 306 So. 3d 331, 334 (Fla. 3d DCA 2020) (quoting *Parnell v. State*, 627 So. 2d 1246, 1247 (Fla. 3d DCA 1993)). "It is not an abuse of discretion for a trial

3

court to deny recross when the prosecutor does not raise any new matters during redirect." *Tennyson v. State,* 254 So. 3d 510, 516 (Fla. 3d DCA 2018).

Here, the trial court did not abuse its discretion because the questions the defendant wanted to ask raised a new matter. Namely, the defendant wanted to ask about the defendant's father. All prior questioning concerned the defendant's brothers—not his father. Therefore, the questions raised a new matter, which is forbidden on redirect examination.

Next, the defendant argues the trial court erred in overruling defense counsel's objection to the State's closing argument. The State responds its closing argument was based on trial testimony. Once again, we agree with the State.

"A trial court has discretion in controlling opening and closing statements, and its decisions will not be overturned absent an abuse of discretion." *King v. State,* 130 So. 3d 676, 687–88 (Fla. 2013) (quoting *Merck v. State,* 975 So. 2d 1054, 1061 (Fla. 2007)).

Generally, a trial court affords attorneys wide latitude during their closing arguments. *Thomas v. State,* 748 So. 2d 970, 984 (Fla. 1999). This is because "[t]he primary purpose of closing argument is to give the parties an opportunity to summarize the evidence and explain how the facts derived therefrom should be applied to the law as instructed by the trial court." *Mintz v. State,* 349 So. 3d 531, 532–33 (Fla. 3d DCA 2022) (quoting *McArthur v. State,* 801 So. 2d 1037, 1039 (Fla. 5th DCA 2001)).

Here, the State did not go beyond what is permitted during closing argument. In fact, the State told the jury precisely what the evidence showed and accurately retold the facts. The defendant's argument is without merit.

We therefore affirm the conviction and sentence.

*Affirmed.*

DAMOORGIAN and CONNER, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

4